UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EDWARD HOLSINGER,

    Petitioner,

  v.

WARDEN, NOBLE
CORRECTIONAL INSTITUTION,

    Respondent.

Case No. 1:23-cv-243

JUDGE DOUGLAS R. COLE
Magistrate Judge Silvain

## OPINION AND ORDER

Magistrate Judge Silvain's June 18, 2024, Report and Recommendations (R&R, Doc. 13), advises this Court to deny Petitioner Edward Holsinger's petition for habeas corpus, (Doc. 1-1), and dismiss this action with prejudice. No party has objected to that recommendation. As explained more fully below, the Court **ADOPTS** the R&R with slight modifications.

## BACKGROUND

This is a habeas case. The petitioner, Edward Holsinger, is an inmate in state custody at the Noble Correctional Institution in Caldwell, Ohio. (Doc. 1, #1). According to the indictment and the state appellate court's factual findings,[1] Holsinger possessed and dealt sizeable quantities of drugs, including methamphetamines, fentanyl, and heroin. (Doc. 13, #880–84 (quoting *State v. Holsinger*, 2022-Ohio-4092 ¶¶ 3–11 (4th Dist.)). A confidential informant (CI)

---

[1] Since this is a federal habeas proceeding instituted by a person in state custody, the Court presumes that the factual determinations made by the state courts are correct absent "clear and convincing" evidence to the contrary. 28 U.S.C. § 2254(e)(1).

recorded two "controlled buys" of drugs, in which Holsinger sold him 3.2 grams and 7.04 grams of methamphetamine, respectively. (*Id.*). During a subsequent traffic stop, officers found twenty-five more grams of methamphetamine in Holsinger's possession, as well as unspecified amounts of fentanyl and heroin. (*Id.*).

As a result, a Lawrence County, Ohio, grand jury indicted Holsinger in April 2021 on five drug-related counts. (Doc. 13, #880). He pleaded not guilty to the charges. A jury ultimately convicted him on all five counts. (*Id.* at #884). Based on that conviction, a state trial court sentenced him to an indefinite prison term of fourteen to eighteen years. (*Id.*).

Shortly thereafter, Holsinger appealed his conviction, raising four assignments of error. (*Id.*). Perhaps the most notable part of his appeal, at least for purposes of this habeas petition, was his appellate counsel's apparent mismanagement of it. Indeed, Holsinger ultimately alleged in a written complaint to Ohio's Disciplinary Counsel—and Disciplinary Counsel confirmed—that his appellate counsel's performance was not up to snuff. *See* Appellant's Delayed Appl. for Reopening, *State v. Holsinger*, 2022-Ohio-4092 (4th Dist.) (No. 21CA20) [hereinafter Rule 26(B) Appl.]. Counsel failed to communicate with Holsinger when she was assigned to his appeal, and she drafted his brief without consulting him even once. *Id.* Then she failed to meet the filing deadline for that brief, prompting the court to enter an order requiring her to show cause for her delinquency. *See id.* Moreover, once the appellate court denied Holsinger's appeal, thereby affirming his convictions, his lawyer failed to transmit that decision to him for nearly a month, "severely limiting" his time to file

a further appeal to the Ohio Supreme Court. *Id.* As noted, Disciplinary Counsel concluded these allegations were largely true, but exercised his prosecutorial discretion not to charge appellate counsel with misconduct, chalking her shortcomings up to COVID-related difficulties and accepting her promise not to take on more appellate cases. *Id.*

In any event, as noted above, Holsinger lost his criminal appeal at the intermediate court of appeals. He then failed to seek review in the Ohio Supreme Court. But that was not necessarily for lack of effort on his own part. After belatedly receiving the appellate court's opinion affirming his conviction, Holsinger apparently attempted to prepare an appeal to the Supreme Court of Ohio by himself. *Id.* at 2. But in a letter to Holsinger dated December 19, 2022—and which he received on December 28, 2022—the Ohio Supreme Court rejected his filing for failure to comply with the court's procedural rules. (Doc. 1-4, #72). The letter further explained that Holsinger had until December 30, 2022, to rectify those deficiencies; otherwise, that court would reject his request for review on timeliness grounds. (*Id.*). With only two days left between when he received the letter and the filing deadline, Holsinger elected not to further pursue his appeal.

Out of options with the Ohio Supreme Court, Holsinger took two stabs at collateral postconviction review. The first is the habeas petition under consideration here, which he filed on April 19, 2023. (Doc. 1). The second was his application to reopen his direct appeal under Ohio Rule of Appellate Procedure 26(B), which he filed on September 15, 2023—nearly five months after filing this habeas petition. Rule

3

26(B) Appl. at 1; Entry Denying Delayed Appl. for Reopening ¶ 3, *State v. Holsinger*, 2022-Ohio-4092 (4th Dist.) (No. 21CA20) [hereinafter Rule 26(B) Denial].

Focus first on Holsinger's Rule 26(B) Application. While not the model of clarity, it appears that the application raised seven additional assignments of error that Holsinger had not raised on direct appeal. *See* Rule 26(B) Appl. Only three of those are relevant here. Two of those three relate to his allegation that prosecution witnesses violated the trial court's sequestration order, which Holsinger argued should have triggered a mistrial because of the appearance of coordinated, rehearsed testimony. The third is a claim for ineffective assistance of trial counsel.

Now turn to the habeas petition under consideration in this case, in which Holsinger raised four grounds for relief. (Doc. 1-1). The first claim alleges some sort of constitutional deficiency—it is unclear what, exactly—with the arresting officer's handling of evidence at the scene. (*Id.* at #7–9). The second and third claims essentially mirror the arguments in his Rule 26(B) Application that the alleged violations of the trial court's sequestration order should have resulted in mistrial. (*Id.* at #9–12). Finally, the fourth claim alleges, again like the Rule 26(B) Application, ineffective assistance of trial counsel. (*Id.* at #12–13). The Government filed its return of writ, arguing that all of these claims were procedurally defaulted, (Doc. 10)—more on that later.

The R&R under review here was docketed on June 18, 2024. (Doc. 13). Applying the Antiterrorism and Effective Death Penalty Act of 1996's (AEDPA) strictures to Holsinger's petition, Magistrate Judge Silvain found that all of

4

Holsinger's claims failed to meet AEDPA's procedural requirements and in any case failed on the merits. Consistent with that, he recommended that this Court deny the petition and dismiss this action with prejudice.

## LEGAL STANDARD

The R&R advised the parties that failure to object within fourteen days could result in a forfeiture of the right to this Court's de novo review of the R&R as well as the right to appeal the decision. (Doc. 13, #899). *Thomas v. Arn*, 474 U.S. 140, 152–53 (1985); *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (noting the "fail[ure] to file an[y] objection[s] to the magistrate judge's R&R … [constitutes a] forfeiture" of such objections); 28 U.S.C. § 636(b)(1). Accordingly, an objecting party needed to object by July 2, 2024. The time for objecting has long since passed, and no party has objected.[2]

Although no party objected to the R&R, the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must "satisfy itself that there is no clear error on the face of the record in order to accept the

---

[2] Although Holsinger never objected to the R&R, he filed two correspondences with the Court after the R&R's docketing. (Docs. 14, 15). Generously construed, neither one is a proper objection triggering a heightened standard of review. The second correspondence, filed on August 20, 2024, missed the July 2 deadline for objecting by nearly two months. (Doc. 15). And the first correspondence, while timely filed on June 26, 2024, does not raise a single objection to the R&R. (Doc. 14). Instead, it contains a mixed bag of arguments, ranging from new allegations of tampering with the trial transcript, (*see id.* at #901), to restatements of arguments already presented elsewhere, like the alleged violation of the trial court's witness separation order, (*id.* at #900). In any case, the shambolic collection of scanned transcript pages, letters from counsel, and state docket records—each of which Holsinger marked up with snippets of arguments in the margins, rather than referring to the documents in separate written arguments—is a far cry from the "specific objections … advanced to some identified portion of [the] R&R" that warrant a heightened standard of review. *Finnell v. Eppens*, No. 1:20-cv-337, 2021 WL 2280656, at *4 (S.D. Ohio June 4, 2021).

recommendation." *See also Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases). Consistent with that charge, the Court has reviewed the R&R and determined that it does not contain any "clear error on [its] face." Fed. R. Civ. P. 72(b) (advisory committee notes).

## LAW AND ANALYSIS

Habeas corpus petitions are governed by AEDPA. That law creates a narrow path to relief, especially for petitioners in state custody. 28 U.S.C. § 2254. And that is by design. AEDPA is meant to serve the overarching goal of "afford[ing] unwavering respect to the centrality 'of the trial of a criminal case in state court.'" *Shinn v. Ramirez*, 596 U.S. 366, 390 (2022) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)). The concern is that any other approach would risk turning state criminal proceedings into merely a "tryout on the road for what will later be the determinative federal habeas [proceeding]." *Wainwright*, 433 U.S. at 90 (internal quotation marks omitted). And that would make little sense as state trial courts benefit from the presence of "the accused [] in the court-room, the jury [] in the box, … [and] the witnesses [ready] to testify." *Id.* In other words, AEDPA intentionally sets a high bar for federal courts to second-guess their state counterparts based on (1) a candid assessment that federal courts have a necessarily limited view of the facts (and the witnesses' credibility), and (2) out of respect for the finality of the state courts' decisions. *See Wilds v. Warden, Chillicothe Corr. Inst.*, __ F. Supp. 3d __, 2024 WL 3841003, at *3–4 (S.D. Ohio 2024).

6

Of the requirements that AEDPA imposes as a precursor to a state prisoner seeking relief in federal court, only one is relevant here. Namely, a petitioner in state custody must "give the state courts an opportunity to act on his claims before he presents those claims to a federal court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (citing 28 U.S.C. § 2254(b)(1)); *see also Washington v. Turner*, 480 F. Supp. 3d 808, 818 (S.D. Ohio 2020). This prevents the "unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation [themselves]." *O'Sullivan,* 526 U.S. at 845 (cleaned up); *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the importance of "ensur[ing] that the States' interest in correcting their own mistakes is respected in all federal habeas cases").

This fair presentation requirement is implemented through two related doctrines: exhaustion and procedural default. The former applies if the petitioner still has an available avenue to pursue relief in state court. If so, the federal court will not act on the habeas petition until the petitioner has availed himself of that state-provided procedural vehicle. *See Wilds*, 2024 WL 3841003, at *3; *Wogenstahl v. Mitchell*, 668 F.3d 307, 322–23 (6th Cir. 2012). Exhaustion is not at issue here.

Procedural default, by contrast, can arise in two ways. First, "a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court," at least if the state court relies on that procedural failing as a basis to deny the claim. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.

7

1986)). Second, "a petitioner may procedurally default a claim … [i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim[.]" *Id.* As discussed below, only the second type of procedural default is at play in this matter.

That said, the procedural default rule also has some limited exceptions, one of which is relevant here.[3] A federal court can hear a procedurally defaulted claim if a petitioner shows: (1) cause for his procedural default, and (2) actual prejudice suffered from the violations of federal law undergirding his petition, or what courts typically refer to as the cause-and-prejudice standard. *Wogenstahl*, 668 F.3d at 321. As applicable here, the "cause" part of the exception can be satisfied by "attorney error rising to the level of ineffective assistance of counsel." *Id.*

A.  **All Four Grounds for Relief Suffer From Procedural Default.**

The R&R concludes that all four of Holsinger's claims for habeas relief were procedurally defaulted and that the cause-and-prejudice exception does not save his petition. (*See* Doc. 13, #898). The Court agrees with that result, but disagrees at the margins about the appropriate path to get there. Specifically, the R&R's analysis appears to have proceeded from an incomplete view of the state court record. According to the R&R, Holsinger never filed a Rule 26(B) application to reopen his appeal. (*Id.* at #899). The Court's review of the state-court record, on the other hand,

---

[3] Another exception, which excuses procedural default where dismissal of the claim would result in manifest injustice, is irrelevant here. That exception requires the petitioner to make a showing of actual innocence, which Holsinger does not do. *See Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011).

8

shows that he did, but that the state appeals court denied that application on timeliness grounds.

Ultimately, though, that does not matter to the end result. To explain why, the Court will address Holsinger's grounds for relief by breaking them into two categories for the procedural default analysis: (1) the claim that Holsinger also raised in his direct appeal in state court, and (2) those claims that Holsinger raised for the first time in his (untimely) Rule 26(B) Application for Reopening.

### 1. The Ground Presented on Direct Appeal Is Defaulted for Failure to Appeal to the Supreme Court of Ohio.

Start with the one claim from Holsinger's habeas petition that he also raised in his direct appeal to Ohio's Fourth District Court of Appeals—Ground Two, which alleges a violation of a witness sequestration order warranting mistrial. (Doc. 13, #889). Since he did not appeal that court's judgment to the Supreme Court of Ohio and the deadline for doing so is long past, "state law no longer allows [him] to raise [his] claim[.]" *Williams*, 460 F.3d at 806. Therefore, the R&R correctly concluded that Ground Two is procedurally defaulted.

### 2. The Grounds Presented in the Application for Reopening Under Rule 26(B) Are Defaulted for Failure to Appeal to the Supreme Court of Ohio.

Now consider those habeas claims Holsinger did not raise in his direct appeal. This group consists of Grounds One, Three, and Four. (Doc. 13, #889). He only raised these claims in his application for state postconviction review under Ohio Rule of Appellate Procedure 26(B).

9

Rule 26(B) allows criminal defendants to "apply for reopening of the appeal from the judgment of conviction … based on a claim of ineffective assistance of appellate counsel." Ohio R. App. P. 26(B). But the rule also includes a timeline, requiring the defendant to file in "the court of appeals where the appeal was decided within ninety days [of its original judgment]." *Id.* An applicant can file later, but to do so he must show "good cause for untimely filing." *Id.*

Holsinger filed his Rule 26(B) Application on September 15, 2023, *over three hundred days* after the Fourth District originally entered judgment on November 15, 2022. *See* Rule 26(B) Denial ¶ 3. True, he argued that his appellate counsel's alleged malfeasance created good cause for that untimely filing. *Id.* ¶ 4. But the Fourth District was unconvinced. It concluded there was "no connection between Holsinger's ability to timely file an appeal with the Supreme Court of Ohio and [his] ability to timely file an application for reopening." *Id.* ¶ 6. Finding that he offered "no sound reason why he could not comply with [the Rule 26(B) filing deadline]," *id.* ¶ 10, the Fourth District denied Holsinger's application to reopen his direct appeal on timeliness grounds. *Id.* Holsinger did not appeal that ruling to the Supreme Court of Ohio.

So what are the implications of that chain of events for his pending habeas petition? Start with this: Merely raising Grounds One, Three, and Four to Ohio's Fourth District in a Rule 26(B) application (even a timely one) does nothing to preserve them for habeas review. Any contrary conclusion "reflects a fundamental misunderstanding about the limited relief available under Rule 26(B)." *Wogenstahl*,

10

668 F.3d at 338. Rather than preserving the substantive issues, such applications preserve only the claim for ineffective assistance of appellate counsel *itself* from procedural default (and as discussed later, Holsinger's application failed even to do that). *Id.* So, as the Rule 26(B) application does not "count" for presentment purposes, Grounds One, Three, and Four of Holsinger's habeas petition have never been "fairly presented" to a state court. And since the time for presenting those three claims where he should have presented them—on direct appeal—is long past, they are procedurally defaulted. *Williams*, 460 F.3d at 806 ("If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted.").

Magistrate Judge Silvain reached the same conclusion, but on incomplete reasoning. He correctly concluded that Grounds One, Three, and Four were procedurally defaulted because Holsinger failed to raise those three grounds on direct appeal. (Doc. 13, #889). But he incorrectly found that Holsinger "never filed [a Rule 26(B) application for reopening]." (*Id.* at #890). As discussed above, that is not so.[4]

Therefore, although the Court modifies the R&R to the extent it relies on an incomplete view of the state court record, it adopts the otherwise correct conclusion that Grounds One, Three, and Four are procedurally defaulted.

---

[4] The Court notes that the Magistrate Judge's incomplete view of the state court record perhaps can be explained by the timeline of Holsinger's filings. Holsinger filed his Rule 26(B) Application nearly five months *after* filing the habeas petition under consideration here, and some three months *after* the Warden had filed his return or writ. Moreover, the docket does not suggest that any party advised the Magistrate Judge of that later state-court filing.

### 3. Holsinger's Asserted Cause for His Procedural Default Is Itself Procedurally Defaulted.

Finally, the Court considers whether Holsinger's stated cause for his procedural default—ineffective assistance of appellate counsel (IAAC)—suffices to open the door to habeas review. It does not. Because the IAAC argument is itself also procedurally defaulted, Holsinger cannot rely on it as the "cause" for his substantive claims' procedural default.

The Supreme Court's decision in *Edwards v. Carpenter*, 529 U.S. 446 (2000), plainly commands that result. There, as here, a habeas petitioner attempted to invoke *Strickland*'s cause-and-prejudice exception to save his procedurally defaulted claims based on IAAC. *Edwards*, 529 at 449–50. The Court held that the asserted cause—IAAC—is *itself* a federal claim, and thus is also subject to procedural default rules. *Id.* at 450–51. So if Holsinger has procedurally defaulted his IAAC, it cannot provide the necessary "cause."

As discussed above, Holsinger's Rule 26(B) Application fairly presented his IAAC claim to the Fourth District. To be sure, Holsinger's argument did not *convince* that court, but it had the opportunity to decide it. Holsinger's problem in habeas, though, is that, after the appeals court denied his argument, Holsinger failed to further appeal that denial to the Ohio Supreme Court. As a result, he did not pursue all available avenues of state court review of his IAAC claim. And since the time for doing so is long expired, he has procedurally defaulted that claim. *Williams*, 460 F.3d at 806.

12

In sum, Holsinger's invocation of the cause-and-prejudice exception to excuse his procedural default of his substantive claims is based on a claim (IAAC) that is itself procedurally defaulted. Therefore, this Court agrees with the R&R's conclusion that there is no basis upon which to find cause for Holsinger's procedural default, much less prejudice. (*See* Doc. 13, #890–91).[5]

## CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's R&R (Doc. 13) as modified, **DENIES** Holsinger's petition for a writ of habeas corpus, (Doc. 1-1), and **DISMISSES** this action **WITH PREJUDICE**. The Court also **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal of this Opinion and Order would not be made in good faith, thereby **DENYING** Holsinger leave to appeal in forma pauperis. Finally, it **DENIES** Holsinger a certificate of appealability under 28 U.S.C. § 2253(c). The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

December 5, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[5] That all four of Holsinger's claims are procedurally defaulted without cause is enough to resolve this case. Even so, the Court notes that it has found no clear error in Magistrate Judge Silvain's further analysis of the merits of Holsinger's petition. (Doc. 13, #892–98); *see also* 28 U.S.C. § 2254(b)(2) (allowing federal habeas courts to "den[y] [petitions] on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). Nonetheless, the Court finds no reason to adopt that analysis here, as Holsinger's procedural default suffices to deny his petition.